HENRY W. STOVER

*v.*

JOSIAH HELLYER.

[Filed November 29th, 1904.]

Where a mortgage provided that certain judgments against the mortgagor should have priority over the mortgage, an indorsement on the margin of the mortgage, reciting that the mortgage is given to secure so much of the purchase-money, is not inconsistent with the agreement for priority of the judgments.

On bill to foreclose.

*Mr. Benjamin W. Ellicott,* for the complainant.

*Mr. James Buchanan,* for the defendant.

BERGEN, V. C.

The mortgage upon which the complainant's case rests contains the following stipulation:

"It is understood and agreed by and between the parties hereto that the lien of three judgments recovered in the New Jersey supreme court against Josiah Hellyer, and now held by Samuel K. Wilson, shall have priority over the lien of this mortgage."

Written on the margin of the mortgage was the following clause: "It is hereby understood by the parties herein interested that this mortgage is given to secure so much of the purchase-money." It is insisted by the complainant that this latter clause overthrows the preference accorded to Wilson, but in my opinion the latter statement is not inconsistent with the agreement that the lien of the judgments should be prior to that of the mortgage. The mortgagee may have said "this mortgage is for a part of the consideration, and I want that stated

in the paper," but at the same time he might waive his right to priority as to another encumbrance.

The material facts, as disclosed by the testimony, are as follows: Josiah Hellyer, who held the title to the property, conveyed it to his brother-in-law, Henry W. Stover, who then held mortgage encumbrances on the property amounting to $15,000, which mortgages were afterwards canceled. The judgment creditors of Hellyer, by a bill in chancery and supplemental proceedings, assailed the *bona fides* of that conveyance. They claimed that the conveyance to Stover was without consideration and with an intent to perpetrate a fraud upon Hellyer's creditors. While they were apparently pursuing the matter vigorously, Mr. Hellyer, for some reason which does not appear in the case, was very anxious to stop the investigation, and applied to his friend, Samuel K. Wilson. Mr. Wilson is dead, but Hellyer and the counsel for the complainant both testify that Mr. Wilson agreed to buy the judgments, provided Hellyer would have the property reconveyed to him, so that his judgments would be a lien upon the property. They further testify that while Mr. Wilson knew that Stover was to have a mortgage for $6,000, it was understood that the mortgage should be so drawn as to provide for the priority of the judgments, subject to the qualification, as both witnesses testify, that Stover should agree to it. This happened on the 12th day of October, 1899. The parties were then before the master for the purpose of being examined as to the integrity of the conveyance to Stover, and in order to stop the proceedings that day, Mr. Wilson, relying upon the promise of Hellyer and of Mr. Ellicott, the attorney of Stover, that the property should be conveyed to Hellyer, at once paid for and took an assignment of these judgments. Four days after that the deed to Hellyer was made by Stover, and the mortgage in controversy executed by Hellyer and accepted by Stover. The mortgage containing the clause providing for preference was drawn by Mr. Stover's attorney and mailed to him for execution. Mr. Stover and Mr. Hellyer met at the office of a commissioner of deeds, in Stockton, New Jersey, on the 16th day of October, 1899, where the papers were executed. It is not pretended that Mr. Stover did not fully understand the

contents of the mortgage, but he now says that he was not willing to accept it subject to the lien of the judgments, and that the commissioner, to cure this, wrote the statement on the margin as above set out.

It further appears that this mortgage was put on record, and that Mr. Wilson was never told that Mr. Stover was unwilling to allow a preference to his judgments. The commissioner who took the acknowledgment and made the entry on the margin of the mortgage testified that that statement expressed all that Mr. Stover insisted upon at the time. It thus appears that Mr. Samuel K. Wilson agreed to take up these judgments, provided the property was reconveyed to Mr. Hellyer, in order that they might be liens thereon; that he expected the mortgage for $6,000 to recognize the priority of his judgments; that the written documents fulfilled his expectations; that he was never informed that the document, as written and accepted by Mr. Stover, did not express the true agreement, and that now, after Mr. Wilson's mouth is closed in death, it is sought, by the testimony of Mr. Hellyer and of the counsel of this complainant, to contradict their written agreements.

I am not disposed to accept the statement that Mr. Wilson agreed to subject his claim to the condition that Mr. Stover's consent should be obtained. Mr. Hellyer, who was the brother-in-law of Mr. Stover, and Mr. Ellicott, the counsel of Mr. Stover, are, I think, mistaken as to the latter part of their interview with Mr. Wilson, because, when the matter was fresh in the mind of the counsel, he prepared the mortgage which contained the agreement, precisely as these defendants claim. A long time has elapsed since this thing happened, and the excuse offered by counsel for preparing the mortgage in this shape, namely, that it could be stricken out in case Mr. Stover would not agree to it, does not encourage me to rely implicitly upon his recollection, for if he, as the attorney of Mr. Stover in making this arrangement in his behalf, knew, as he must have known, that Mr. Stover would not agree to it, for it is not to be presumed that the arrangement had not been communicated to Stover before the papers were prepared, he would not have incorporated it in the mortgage.

It must be remembered that Hellyer and Stover were both parties defendant to the proceedings taken by these creditors to have the conveyance set aside as fraudulent, and if the conveyance to Stover had been an honest one, for which he had paid $15,000 consideration, he would not have agreed to transfer the property to Hellyer, and accept from him his personal obligation, of no value, for $9,000, as representing a part of the $15,000 he had paid. I am entirely satisfied that Stover, his counsel and Hellyer, were all convinced they could not defend the transaction, and appealing to Mr. Wilson to assist them were willing to give the judgments he was requested to purchase priority.

My conclusion is that when Mr. Stover accepted this mortgage he knew that it provided that the judgments held by Samuel K. Wilson should be a prior lien upon the land embraced in the mortgage, and my conviction is strengthened by the circumstance that, although the bill of complaint filed in this cause was drawn by the same counsel who drew the mortgage, it is nowhere alleged that there was any fraud, accident or mistake in the form of the mortgage as drawn, and certainly this counsel, who had attended to the matter for Mr. Stover from the beginning, would have seen, upon inspection, that the part which he expected Mr. Stover to erase before execution, if it did not correctly state his understanding and agreement, had not been erased, and he would have charged that the paper as drawn did not correctly state the agreement.

The result I have reached is that the evidence by which it is sought to overthrow this written agreement has not the force and conclusiveness which should be required when we are asked to set aside the rights of a party, as established by a solemn writing, in favor of another, whose claim depends upon the oral testimony of persons strongly interested in the result.